**FILED**

**FEBRUARY 19, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

*`IN THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF ILLINOIS*
*EASTERN DIVISION*

**08 C 1003**

| | | |
|---|---|---|
| RHT Inc., an Illinois corporation, d/b/a/ Liners Direct | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. |
| v. | ) ) | **JUDGE LEINENWEBER** **MAGISTRATE JUDGE BROWN** |
| | ) | Judge |
| Re-Bath, L.L.C., an Arizona limited liability company, | ) ) ) | |
| Defendant. | ) ) | Magistrate Judge |
| | ) | **JURY DEMANDED** |

## COMPLAINT FOR DECLARATORY RELIEF OF NON-INFRINGEMENT, INVALIDITY AND/OR UNENFORCEABILITY OF U.S. DESIGN PATENT NO. D552,757

NOW COMES the Plaintiff, RHT Inc., d/b/a Liners Direct (hereinafter "Liners Direct"), by and through its attorney, Mark E. Wiemelt, of the Law Offices of Mark E. Wiemelt, P.C., and complains against the Defendant, Re-Bath, L.L.C. (hereinafter " Re-Bath"), as follows:

## NATURE OF THE ACTION

1.    This is an action for declaratory relief brought pursuant to Title 28, United States Code §§ 2201 and 2202.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C.A. § 1338(a) (arising under Patent and Trademark Laws).

3.      This Court has personal jurisdiction pursuant to Ill. Rev. Stat., ILCS, Ch. 735, §§ 5/2-208 and 5/2-209 and Fed.R.Civ.P. 4(e).  On information and belief, Defendant Re-Bath has done and is doing substantial business in this judicial district, including maintaining franchisees in this judicial district, and advertising, marketing, offering for sale, selling and/or distributing its services and products for use in this jurisdiction.  Re-Bath has also directed its activities toward Plaintiff in this jurisdiction.

4.      Venue is proper in this District and in this Court pursuant to 28 U.S.C. § 1391(b) and (c), since, *inter alia*, the causes of action asserted arose from or are connected with the purposeful acts committed by Defendant Re-Bath in this District.

## THE PARTIES

5.      Plaintiff Liners Direct, Inc. is an Illinois Corporation duly organized and existing under and by virtue of the laws of the State of Illinois, having its principal place of business located at 1035 N. Hilltop Ave. Itasca, IL 60143, and is engaged in the business, *inter alia*, of providing bathroom remodeling services and products.

6.      Defendant Re-Bath, LLC. is, upon Plaintiffs' information and belief, an Arizona Limited Liability Company, with its principal place of business located in Scottsdale, AZ, and is doing business in this judicial district, and is engaged in the business, *inter alia*, of providing bathroom remodeling services and products.

## FACTS COMMON TO ALL COUNTS

7.     Defendant Re-Bath, on information and belief, is the owner, by assignment, of U.S. Design Patent No. D552,757, issued to Norman A. Murdock, on December 29, 2005, entitled "One-Piece Molded Subway Tile System" (hereinafter the "'757 patent"). A copy of the '757 patent is attached hereto as Exhibit A and made a part hereof.

8.     On or about February 11, 2008, Plaintiff received a letter from counsel for Defendant dated February 5, 2008, expressly charging Plaintiff with infringing the '757 patent and threatening litigation of the '757 patent against Plaintiff. A copy of the February 5, 2008 letter is attached hereto as Exhibit B and made a part hereof.

9.     The Plaintiff and Defendant have a history of intellectual property litigation against each other, including patent infringement litigation in this judicial district.

10.     On December 21, 2007, Defendant filed a Complaint in the United States District Court for the District of Arizona, against Mincey Marble Manufacturing, Inc., alleging, *inter alia*, infringement of the '757 patent. A copy of the Complaint filed in Case No. 07-cv-02596 in the United States District Court for the District of Arizona is attached hereto as Exhibit C and made a part hereof.

11.     On January 24, 2008, Mincey Marble Manufacturing, Inc. filed an Answer to Plaintiff's Complaint and Counterclaims in the United States District Court for the District of Arizona, against Mincey Marble Manufacturing, Inc., alleging, *inter alia*, infringement of the '757 patent. A copy of the Answer to Plaintiff's Complaint and

Counterclaims in Case No. 07-cv-02596 in the United States District Court for the

District of Arizona is attached hereto as Exhibit D and made a part hereof.

## COUNT I

## DECLARATORY RELIEF

## NON-INFRINGEMENT, INVALIDITY AND/OR UNENFORCEABILITY

## OF OF U.S. DESIGN PATENT NO. D552,757

12.    Plaintiff adopts the allegations of Paragraphs 1-11 as if fully alleged herein

and further alleges as follows:

13.    Defendant through its communications with Plaintiff, and Defendant's

threats of litigation, have sought to interfere with Plaintiff's business and have created a

real and reasonable apprehension that Plaintiff will be subject to liability if it continues to

commercialize its products in the United States.

14.    There is a justiciable controversy between the parties concerning

Plaintiff's liability for alleged infringement of the '757 patent and Defendant's right to

demand Plaintiff cease commercializing its products in the United States.  The charges of

infringement noted above have caused and threaten further to cause injury to Plaintiff,

including litigation costs and attorneys fees.  Such acts likely will occur, and continue to

occur, unless enjoined by this Court.

15.    Upon information and belief, the '757 patent is invalid and unenforceable

for failing to meet the conditions of patentability, including but not limited to the

conditions specified in 35 U.S.C. §§ 101, 102, 103 and 132, for failure to comply with the

conditions specified in 35 U.S.C. § 112, and/or due to inequitable conduct (fraud before the United States Patent Office).

16.     Upon information and belief, no products manufactured or sold by Plaintiff in the U.S. are covered by the sole claim of the '747 patent.

17.     This is an exceptional case within the meaning of 35 U.S.C. § 285.

## **<u>RELIEF SOUGHT</u>**

WHEREFORE Plaintiff prays:

A.     Defendant be enjoined, pending trial and permanently, from asserting or threatening to assert rights under U.S. Design Patent No. D552,757 against Plaintiff, its customers, suppliers, licensees, or others acting for or with Plaintiff, from engaging in acts or conduct which suggests in any way that Defendant has the right to curtail any activity of Plaintiff, and from prosecuting any action in any other Court to prevent Plaintiff from commercializing its products within or outside the United States;

B.     For an assessment against Defendant of Plaintiff's costs and attorneys' fees and expenses due to the exceptional nature of this case;

C.     For a declaration that U.S. Design Patent No. D552,757 is not infringed by Plaintiff;

D.     For a declaration that U.S. Design Patent No. D552,757 is invalid;

E.    For a declaration that U.S. Design Patent No. D552,757 is unenforceable;

F.    For recovery of damages for the time diverted and expenses incurred in responding to Defendant's charges of infringement and threats of litigation; and

G.    For such other and further relief as the Court may deem appropriate or just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in the above-captioned action.

Dated February 19, 2008

RHT Inc.

By:   /s/ Mark E. Wiemelt

One of Its Attorneys

Mark E. Wiemelt – IL. Atty.#: 06208213
Law Offices of Mark E. Wiemelt, P.C.
10 South LaSalle Street, Suite 3300
Chicago, IL 60603
Ph:    312-372-7664
Fx:    312-372-6568
Email:  mark@wiemeltlaw.com

**EXHIBIT A**

US00D552757S

(12) **United States Design Patent**    (10) **Patent No.:**    **US D552,757 S**

Murdock    (45) **Date of Patent:**    ** **Oct. 9, 2007**

(54) **ONE-PIECE MOLDED SUBWAY TILE SYSTEM**

(75) Inventor: **Norman A. Murdock**, Scottsdale, AZ (US)

(73) Assignee: **Rebath, LLC**, Mesa, AZ (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/245,798**

(22) Filed: **Dec. 29, 2005**

(51) **LOC (8) Cl.** .................................................. **25-01**

(52) **U.S. Cl.** ...................... **D25/121**; D25/138; D25/163

(58) **Field of Classification Search** ............... D25/121, D25/138, 157, 156, 163, 158, 159, 160, 145, D25/149, 151; 52/311.2, 314, 316, 389, 52/384, 630, 474, 782.1, 789, 311.1, 311.3; 428/48, 49

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D178,659 | S | * | 9/1956 | Hield | D25/121 |
| D206,651 | S | * | 1/1967 | Bogan, Jr. | D5/3 |
| D244,296 | S | * | 5/1977 | Smith | D25/149 |
| 5,052,160 | A | * | 10/1991 | Gentsch et al. | 52/314 |
| D330,435 | S | * | 10/1992 | Dukart et al. | D25/138 |
| 5,816,005 | A | * | 10/1998 | Han | 52/391 |
| D405,200 | S | * | 2/1999 | Hines | D25/160 |
| 6,079,177 | A | * | 6/2000 | Halchuck | 52/506.06 |
| D453,577 | S | * | 2/2002 | Ohanesian | D25/163 |
| D453,847 | S | * | 2/2002 | Ohanesian | D25/163 |
| D499,196 | S | * | 11/2004 | Crawley et al. | D25/160 |
| D532,123 | S | * | 11/2006 | Folliard | D25/163 |

* cited by examiner

*Primary Examiner*—Doris Clark

(74) *Attorney, Agent, or Firm*—Gallagher & Kennedy, P.A.; Donna H. Catalfio

(57) **CLAIM**

I claim the ornamental design for the one-piece molded subway tile system, as shown and described.

**DESCRIPTION**

FIG. **1** is a front view of a one-piece molded subway tile system showing my design; and,

FIG. **2** is an enlarged cross-sctional view taken along line **2**—**2** of FIG. **1**.

The right side, left side, top, bottom and back of the one-piece molded subway tile system are flat and unadorned and do not form a part of the claimed design.

The claimed design is broken on one end and in the center to indicate indeterminate length and width thereof.

**1 Claim, 1 Drawing Sheet**



**EXHIBIT B**

**GALLAGHER & KENNEDY**
———— P.A. ————
LAW OFFICES

IVAN J. MLACHAK
DIRECT DIAL:(602) 530- 8361
E-MAIL:IVAN.MLACHAK@GKNET.COM

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA  85016-9225
PHONE:  (602) 530-8000
FAX:  (602) 530-8500
WWW.GKNET.COM OFFICE

February 5, 2008

**VIA FEDERAL EXPRESS AND
REGULAR US MAIL**

Jeff Conner, President
Liners Direct, Inc.
1035 North Hilltop Drive
Itasca, IL 60143

   **Re:  Patent Infringement Demand**

Dear Mr. Conner:

  This law firm represents Re-Bath, LLC ("Re-Bath") in connection with its intellectual property rights.  Re-Bath engages in business that is related to bathroom design, remodeling, and associated fixtures and products.  In one aspect of this business, Re-Bath designs, manufactures and sells tub and shower surrounds that have specific designs.  These designs are popular designs that are valued by the consuming public.  Further, Re-Bath has protected its intellectual property in these designs by, among other actions, applying for and obtaining patent protection.  For example, Re-Bath is the owner of United States Design Patent No. D552,757 ("the Re-Bath patent") entitled ONE-PIECE MOLDED SUBWAY TILE SYSTEM.  A copy of the Re-Bath patent is attached to this letter as Exhibit A.  As you will see, the Re-Bath patent protects the ornamental design for a molded wall surround system.

  It has come to our client's attention that Liners Direct also manufactures and offers for sale several designs for tub/shower surrounds.  We have recently observed your product offerings as shown at recent trade shows.  We have noted that Liners Direct manufactures and offers for sale a panel surround design that is a duplicate copy of the Re-Bath patent.  Your design constitutes patent infringement of Re-Bath's patent rights.  We demand that you immediately cease and desist any activity relating to the making, using, selling, offering for sale, or importing of the infringing product.

         **DEMAND**

  Re-Bath is determined to resolve what it considers to be gross misuse of its patent rights, giving rise to, at a minimum, claims for patent infringement under federal law.  Pursuant to federal statute, Re-Bath is entitled to enjoin any further infringement by Liners Direct.  35 U.S.C. § 283.  In addition, Re-Bath is entitled to recover damages, interest, and costs.  35 U.S.C. § 284. Finally, Re-Bath is entitled to recover both treble damages and attorneys' fees as a result of the intentional nature of the parties' infringement.  35 U.S.C. §§ 284 & 285.  Therefore, to resolve these claims, Re-Bath hereby demands cooperation from you as follows:

(i)     Immediately desist the sale and distribution of any and all bath systems that infringe on the Re-Bath Patent;

(ii)    Immediately submit a complete accounting of all sales of infringing bath systems and copies of all related sales contracts;

(iii)   Pay to Re-Bath reasonable compensation to remedy the past harm caused by your misconduct;

(iv)    Immediately provide to Re-Bath the identity of each and every supplier or distributor that is or has similarly infringed Re-Bath's patent rights; and

(v)     Execute a written agreement in which Liners Direct warrants, represents, and acknowledges the following: (a) Liners Direct recognizes the validity of re-Bath's patent, U.S. Pat. No. D552,757; (b) Liners Direct attests that they will forego any further infringement of the D552,757 Patent; and (c) Liners Direct attests that they have fully complied with requests (i) – (iv) above.

You should note that Re-Bath takes enforcement of its patent rights very seriously. Furthermore, Re-Bath considers Liners Direct's actions to be intentional and in bad faith. Our client is therefore determined to proceed to enforce its patent rights unless Liners Direct fully complies with the demands above. If necessary, our client will pursue all available remedies against your company, including equitable remedies, monetary damages, profits derived from the infringement of Re-Bath's patent rights, profits lost by Re-Bath as result of the infringement, attorneys' fees, costs, prejudgment interest and punitive damages.

We expect full compliance with the demands set forth above no later than **February 19, 2008**. If we do not receive adequate verification of your compliance by that date, our client may proceed with federal court litigation against you in the appropriate forum.

This letter is not intended to be a full statement of facts in this matter, nor is it an exhaustive list of all claims and remedies our client may have against you. Nothing in this letter constitutes a waiver of any of our client's rights or remedies. There will be no further notice prior to initiation of litigation. Please contact us if you have any questions regarding this matter.

Sincerely,

GALLAGHER & KENNEDY, P.A.

By: Ivan J. Mlachak

IJM:sss

**EXHIBIT C**

1 | Brian W. LaCorte (012237)
Ivan J. Mlachak (021939)
2 | GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
3 | Phoenix, Arizona 85016-9225
(602) 530-8000
4 | E-mail: bwl@gknet.com; ivan.mlachak@gknet.com
Attorneys for Plaintiff

5

6 | UNITED STATES DISTRICT COURT

7 | DISTRICT OF ARIZONA

8

9 | Re-Bath, L.L.C. an Arizona limited liability company;

**No. _____**

**COMPLAINT**

10 |     Plaintiff,

11 | v.

12 | Mincey Marble Manufacturing Inc., a Georgia corporation,

13 |     Defendant.

14

15 |    Plaintiff Re-Bath, L.L.C. ("Re-Bath"), after making a good faith effort to resolve

16 | this dispute, now finds it necessary to institute this civil action against Mincey Marble

17 | Manufacturing, Inc. ("Mincey"), and for its complaint alleges as follows:

18 | **NATURE OF THE ACTION**

19 |    1.  This action seeks preliminary and permanent injunctive relief, monetary

20 | relief, costs, and attorneys' fees based on Mincey's patent infringement in violation of 35

21 | U.S.C. § 271.

22

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

## THE PARTIES

2.      Plaintiff Re-Bath, L.L.C. is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona.  Re-Bath engages in business, among others, that is related to bathroom design, remodeling, and associated fixtures and products.

3.      Mincey Marble Manufacturing, Inc. is a Georgia corporation with its principal place of business at 4321 Browns Bridge Road, Gainesville, Georgia 30504.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.  This Court has subject matter jurisdiction exclusive of the courts of the states under 28 U.S.C. § 1338(a).  This Court also has original federal question jurisdiction over this action under 28 U.S.C. § 1331.

5.      Upon information and belief, Mincey, either directly or through its distributors, has made, used, sold, and/or offered for sale products and services throughout the United States and in this District, that infringe the Re-Bath patent rights.

6.      Upon information and belief, Mincey has maintained and conducted commercial activity over one or more Internet websites that feature infringing products directed to this and other forums within the United States.

7.      In addition to the above contacts with this District, Mincey has further followed a course of ongoing and deliberate conduct that subjects it to personal jurisdiction in this venue under the *Calder* Foreign Effects doctrine.  *Calder v. Jones*, 465 U.S. 783 (1984).

8.    Mincey systematically sells tub and shower surrounds and enclosures to a number of national hotel and motel brands.  On information and belief, numerous of these hotels (and offending products) are present in Arizona.  Consequently, Mincey is systematically committing acts in one state that have a tortious impact throughout the country, and specifically in Arizona.  Under the rationale of *Calder v. Jones* this conduct subjects Mincey to jurisdiction where the damage and impact of its tortious conduct has effect.

9.    The Internet website maintained by Mincey (www.minceymarble.com) proudly lists the many national accounts that do business with Mincey.  Further, this website partially notes which Mincey products are sold to which particular hotel.  Thus, based on Mincey's own information, Mincey has accounts with the following national hotel and motel chains, and where applicable, it is also noted which infringing product is sold to which particular hotel:

10.    Hilton Hotels, including the Hilton branded hotels Hampton Inns (Diamond Panel Surrounds), Hampton Inn and Suites (Diamond Panel Surrounds), Doubletree, Homewood Suites (Diamond Panel Surrounds), Embassy Suites (Diamond Panel Surrounds), and Hilton Garden Inn;

11.    Starwood Hotels and Resorts Worldwide, including Four Points by Sheraton (specifically noted as a Subway Brick customer);

12.    Marriott Hotels including the following Marriott hotel brands:  Courtyard Marriott, Fairfield Inns (specifically noted as a Subway Brick customer), TownePlace Suites, Residence Inn, and SpringHill Suites;

13. Choice International Hotels, including the following individual hotel brands, Cambria Suites, Comfort Inn (Diamond Panel Surrounds), Comfort Suites (Diamond Panel Surrounds), Quality Inn (Diamond Panel Surrounds), EconoLodge, Sleep Inn, Clarion (Diamond Panel Surrounds), MainStay Suites (Diamond Panel Surround), Suburban Lodge (Diamond Panel Surrounds), and Roadway Inn;

14. Hotel Sierra;

15. The Intercontinental Hotels and Resorts, which includes the brands: Holiday Inn (Diamond Panel Surround), Holiday Inn Express (Diamond Panel Surround), Holiday Inn Select, Candlewood Suites (Diamond Panel Surround), Staybridge Suites, Hotel Indigo (Subway Brick), and Crowne Plaza Hotels and Resorts (Subway Brick); and

16. Carlson Hotels, including the Country Inn and Suites.

17. The broad and national scope of Mincey's sales to national hotel brands constitutes selling infringing products intended for use in Arizona.

18. On multiple occasions Mincey has attended trade shows with the intent of marketing to customers who have business locations throughout the country, including Arizona. Arizona-based customers have attended these events and observed the Mincey product offerings. These trade shows have taken place at various locations throughout the United States and in Arizona. This is further evidence that Mincey intentionally seeks customers and sales throughout the country.

19. In addition to the previously described national sales efforts, Mincey has also had a direct business relationship with Re-Bath. On previous occasions Mincey has acted as a supplier of goods directly to Re-Bath and/or its affiliated company AmBath.

1   This prior relationship between Mincey and Re-Bath provided Mincey with further

2   knowledge and information that patent infringement activity would directly and

3   negatively affect Re-Bath in Arizona.

4        20.    In view of the foregoing, venue is proper in this District pursuant to 28

5   U.S.C. § 1391(b) because a substantial part of the events giving rise to this action

6   occurred in this District, and pursuant to 28 U.S.C. § 1400 because Mincey has

7   committed acts of infringement in this District.  Jurisdiction is further proper in view of

8   the *Calder* Foreign Effects doctrine.

9                    **BACKGROUND OF THE LITIGATION**

10       21.    Re-Bath owns all right, title, and interest in United States Patent No. D523,

11  566 (sometimes referred to as the D'566 patent), and titled "Hampton Tile Wall Surround

12  System."  A copy of the '566 patent is attached hereto as Exhibit A**.**

13       22.    Re-Bath also owns all right, title, and interest in United States patent No.

14  D552, 757 (sometimes referred to as the D'757 patent), entitled "One-Piece Molded

15  Subway Tile System."  A copy of the D'757 patent is attached hereto as Exhibit B.

16       23.    Mincey manufactures, uses, sells, and offers for sale several varieties of

17  tub/shower surrounds.  One such Mincey product is sold under the name "Diamond Panel

18  Surrounds".  Some internet pages related to the product description for the Diamond

19  Panel Surrounds are attached hereto at Exhibit C.

20       24.    Mincey also manufactures, uses, sells, and offers for sale a tub/shower

21  surround under the name "Subway Brick Pattern."  Some internet pages related to the

22

1    product description for the Subway Brick Pattern surround are attached hereto at Exhibit

2    D.

3        25.    Re-Bath has never authorized Mincey to make, use, or sell the Diamond

4    Panel surround or the Subway Brick Pattern surround.  To the contrary, Re-Bath has

5    placed Mincey on notice of Re-Bath's intellectual property rights.  The pre-filing

6    correspondence between the parties related to Re-Bath's patents is attached hereto at

7    Exhibit E.  However, after ample time to cease its actions, Mincey continues to make,

8    use, sell, and offer for sale the infringing products.  Mincey's continued and deliberate

9    conduct in violation of Re-Bath's patent rights is now knowing, willful, and intentional.

10                    **COUNT ONE**
                  **PATENT INFRINGEMENT**

11

12        26.    Plaintiff incorporates by reference the allegations contained in paragraphs 1

     through 25 above.

13

14        27.    Mincey's unauthorized manufacture, import, use, sale and/or offer to sell

     products and services upon which the claims of the D'566 and D'757 patents read

15

     constitutes patent infringement in violation of 35 U.S.C. § 271(a).

16

17        28.    Mincey has actively induced others to make and/or use the products and

     services upon which the claims of the D'566 and D'757 patents read.  Such conduct

18

     constitutes patent infringement in violation of 35 U.S.C. § 271(b).

19

20        29.    Mincey has offered to sell and has sold components of the systems upon

     which the claims of the D'566 and D'757 patents read, constituting a material part of the

21

     invention, knowing that the components are especially adapted for use in infringing the

22

1   Re-Bath patents.  These acts constitute contributory patent infringement in violation of 35

2   U.S.C. § 271(c).

3        30.    Mincey's infringement has been willful and intentional.

4        31.    Due to the intentional nature of Mincey's acts, this is an exceptional case in

5   which Plaintiff is entitled to treble damages, attorneys' fees and costs pursuant to 35

6   U.S.C. §§ 284 & 285.

7        32.    By reason of the foregoing acts of Mincey, Plaintiff has sustained, and

8   unless enjoined will continue to sustain, substantial injury and damage.  Mincey has

9   unlawfully and wrongfully derived income and profits and has been unjustly enriched as

10  a result of the foregoing acts.  Plaintiff has no adequate remedy at law to fully

11  compensate it for the damage Mincey's actions have caused and will cause.

12                        **<u>PRAYER FOR RELIEF</u>**

13       WHEREFORE, Plaintiff prays for judgment against Mincey Marble as follows:

14       (A)    Permanently enjoining Mincey, their servants, agents, and employees, and

15  all other persons in active concert or participation with Mincey, from directly or

16  indirectly infringing the Re-Bath patents, and

17       (B)    Ordering Mincey to file with this Court and to serve on Plaintiff, within

18  thirty (30) days from the date of entry of any order or injunction, a report in writing,

19  under oath, setting forth in detail the manner and form in which Mincey has complied

20  with the terms of the order or injunction;

21       (C)    Ordering Mincey to pay to Plaintiff, pursuant to 35 U.S.C. §§ 284 & 285,

22  the following:

1          (i)      all monetary damages sustained, and to be sustained, by Plaintiff as a

2     consequence of Mincey's unlawful conduct, including lost profits and reasonable

3     royalties, in an amount to be determined at trial; and

4          (ii)     Plaintiff's costs and disbursements for this action, including

5     reasonable attorneys' fees;

6     (D)    Finding Mincey's actions have been willful, and, therefore, ordering that

7     the damages be increased pursuant to 35 U.S.C. § 284;

8     (E)    Awarding Plaintiff total damages in an amount to be proven at trial;

9     (F)    Awarding interest on the above damage awards; and

10    (G)    Awarding Plaintiff such other and further relief as this Court may deem just

11    and proper.

12          RESPECTFULLY SUBMITTED this 21st day of December, 2007.

13                              GALLAGHER & KENNEDY, P.A.

14                    By: s/Brian W. LaCorte
                          Brian W. LaCorte
15                        Ivan J. Mlachak
                          2575 East Camelback Road
16                        Phoenix, Arizona 85016-9225
                            Attorneys for Plaintiff

17

18

19

20

21

22

1737038                              8

# EXHIBIT A

# EXHIBIT A



US00D523566S

(12) **United States Design Patent**

Murdock

(10) Patent No.: **US D523,566 S**

(45) Date of Patent: ** **Jun. 20, 2006**

(54) **HAMPTON TILE WALL SURROUND SYSTEM**

(75) Inventor: **Norman A. Murdock**, Scottsdale, AZ (US)

(73) Assignee: **ReBath, LLC**, Mesa, AZ (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/206,406**

(22) Filed: **May 28, 2004**

(51) LOC (8) Cl. ...................................... **25-01**
(52) U.S. Cl. ..................................... **D25/121**; D25/138
(58) Field of Classification Search ............... D25/121, D25/138; 52/311.2, 314, 316, 389, 384; 428/48, 428/49

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 674,125 | A | * | 5/1901 | Semmer ...................... 52/389 |
| D178,659 | S | * | 9/1956 | Hield ........................ D25/121 |
| 3,125,831 | A | * | 3/1964 | Marsch et al. ............. 52/309.3 |
| 5,052,160 | A | * | 10/1991 | Gentsch et al. .............. 52/314 |
| 5,142,836 | A | * | 9/1992 | Kearns ...................... D25/138 |
| D417,294 | S | * | 11/1999 | Tormanen .................. D25/138 |

* cited by examiner

*Primary Examiner*—Doris Clark
(74) *Attorney, Agent, or Firm*—Callagher & Kennedy, P.A.; Donna H. Catalfio

(57) **CLAIM**

The ornamental design for a hampton tile wall surround system, as shown and described.

**DESCRIPTION**

FIG. 1 is a perspective view of a hampton tile wall surround system showing my new design; and,
FIG. 2 is a top plan view thereof.
The sides, back , and bottom of the wall surround system of FIGS. 1–2 are flat and unadorned and do not form a part of the claimed design.
The claimed design is broken on both ends and in the center to indicate indeterminate length and width thereof.

**1 Claim, 2 Drawing Sheets**



*FIG. 1*





**U.S. Patent**          Jun. 20, 2006          Sheet 2 of 2          US D523,566 S

*FIG. 2*



# EXHIBIT B

# EXHIBIT B

US00D552757S

(12) **United States Design Patent** (10) Patent No.: **US D552,757 S**
Murdock                                   (45) Date of Patent: ✳✳ **Oct. 9, 2007**

(54) **ONE-PIECE MOLDED SUBWAY TILE SYSTEM**

(75) Inventor: **Norman A. Murdock**, Scottsdale, AZ (US)

(73) Assignee: **Rebath, LLC**, Mesa, AZ (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/245,798**

(22) Filed: **Dec. 29, 2005**

(51) LOC (8) Cl. ................................................ **25-01**
(52) U.S. Cl. ...................... **D25/121;** D25/138; D25/163
(58) **Field of Classification Search** .............. D25/121,
D25/138, 157, 156, 163, 158, 159, 160, 145,
D25/149, 151; 52/311.2, 314, 316, 389,
52/384, 630, 474, 782.1, 789, 311.1, 311.3;
428/48, 49
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| D178,659 | S | * | 9/1956 | Hield | D25/121 |
| D206,651 | S | * | 1/1967 | Bogan, Jr. | D5/3 |
| D244,296 | S | * | 5/1977 | Smith | D25/149 |
| 5,052,160 | A | * | 10/1991 | Gentsch et al. | 52/314 |
| D330,435 | S | * | 10/1992 | Dukart et al. | D25/138 |
| 5,816,005 | A | * | 10/1998 | Han | 52/391 |
| D405,200 | S | * | 2/1999 | Hines | D25/160 |
| 6,079,177 | A | * | 6/2000 | Halchuck | 52/506.06 |
| D453,577 | S | * | 2/2002 | Ohanesian | D25/163 |
| D453,847 | S | * | 2/2002 | Ohanesian | D25/163 |
| D499,196 | S | * | 11/2004 | Crawley et al. | D25/160 |
| D532,123 | S | * | 11/2006 | Folliard | D25/163 |

* cited by examiner

*Primary Examiner*—Doris Clark
(74) *Attorney, Agent, or Firm*—Gallagher & Kennedy, P.A.; Donna H. Catalfio

(57) **CLAIM**

I claim the ornamental design for the one-piece molded subway tile system, as shown and described.

**DESCRIPTION**

FIG. 1 is a front view of a one-piece molded subway tile system showing my design; and,

FIG. 2 is an enlarged cross-sctional view taken along line 2—2 of FIG. 1.

The right side, left side, top, bottom and back of the one-piece molded subway tile system are flat and unadorned and do not form a part of the claimed design.

The claimed design is broken on one end and in the center to indicate indeterminate length and width thereof.

**1 Claim, 1 Drawing Sheet**





*FIG. 1*



*FIG. 2*

# EXHIBIT C

# EXHIBIT C


*Art and Innovation in cultured marble*

November 21,



**NEWS BULLETIN:** Hotel Indigo by InterContinental Hotels Group has selected Mincey Marble'
TS-VN/3x6 Subway with the LIST-04 River Rock listello as the standard for their tub and show
surrounds.

**Home**

**Product Information**

Product Categories
Brand Families
Colors
Literature
MINCOR™ and Mincey
Classic™


**Shipping & Handling**


**Installers**

**About Mincey**

**Contact Us**

[                    ]
**Search**

🔔 Signup for News Alerts
**Name:**
[                    ]
**Email:**
[                    ]
**Submit**
Info on News Alerts

# Tub/Shower Surrounds

**Product Categories > Tub/Shower Surrounds > Diamond Panel
Surrounds**



## Modular Diamond Panel Surrounds
– TS-DS/Gloss

Modular diamond panel surrounds come with
1- 60" x 74" x 1/4" back panel, 2 – 30" x 74
1/4" side panels, soapdish style of choice,
separate trim strips, border on all 4 sides,
gloss finish only. Available in Mincey Classic
MINCOR™, solid, textured or granite colors.
HEIGHT DIMENSIONS ARE SET.

**Product Information**
(PDF (Adobe Acrobat file) - 48 K)

**Technical Specifications**
(PDF (Adobe Acrobat file) - 46 K)

**Installation Instructions**
(PDF (Adobe Acrobat file) - 75 K)

**Master Spec**
(PDF (Adobe Acrobat file) - 61 K)

**Request a DWG file**

**Return to Diamond Panel Surrounds pag**
↩

For more information,
Call: 770.532.0451 or 800.533.1806 -- Email: info@minceymarble.com
(Sorry, no residential products outside the state of Georgia. Please visit ICPA for your residential needs.)

Copyright© 2000-2006 Mincey Marble Inc.



MINCEY MARBLE

TS-DS/GLOSS DIAMOND PANEL TUB SURROUNDS®
GENERAL PRODUCT INFORMATION

## DIAMOND PANEL SURROUNDS
## - GLOSS KIT*



*FAUCETS SHOWN ARE SUPPLIED
BY OTHERS,

DIMENSIONS:                                          INSTALLATION INSTRUCTIONS:
HEIGHT:              74" MAX
WIDTH:               30" SIDE WALLS
                     60" BACK WALL


STANDARD FEATURES:                                   TECHNICAL SPECIFICATIONS:
BORDER ON FOUR SIDES
GLOSS FINISH
MINCEY CLASSIC™


OPTIONS (AVAILABLE SELECTIONS):
MINCOR™
2 – 2" X ¾" TRIM STRIPS
2 – 2" X ½" TRIM STRIPS
2 – 2" X 1 ¼" TRIM STRIPS
SOAPDISH STYLE OF CHOICE


AVAILABLE COLORS:
MINCEY SOLID, TEXTURED AND GRANITE

MINCEY MARBLE MANUFACTURING • 4321 BROWNS BRIDGE ROAD• GAINESVILLE • GEORGIA • 30504
• PH - 770.532.0451 • 800.533.1806 •FX – 770.531.0935 • WWW.MINCEYMARBLE.COM



MINCEY MARBLE

**TS-DS/GLOSS DIAMOND PANEL TUB SURROUNDS®**
TECHNICAL SPECIFICATIONS

## MODULAR DIAMOND PANEL SURROUNDS -GLOSS KIT

### STANDARD FEATURES:

- HEIGHT 74" MAX
- BORDER ON ALL 4 SIDES
- 2 – 30" X 74" END PANELS
- 1 – 60" X 74" BACK PANEL
- GLOSS FINISH
- MINCEY CLASSIC™



**Left Wall**     **Back Wall**     **Right Wall**

### OPTIONS: (AVAILABLE SELECTIONS)

- MINCOR™
- 2- 96" X 2" X ½" TRIM STRIPS
- 2- 96" X 2" X ¾" TRIM STRIPS
- 2- 96" X 2" X 1¼" TRIM STRIPS
- SOAPDISH STYLE OF CHOICE

# EXHIBIT D

# EXHIBIT D

**MINCEY MARBLE     TS-VN/3" x 6" SUBWAY BRICK TUB/SHOWER SURROUNDS®**

GENERAL PRODUCT INFORMATION

## 3" x 6" SUBWAY BRICK SURROUNDS*



*FAUCETS, SHOWER HEAD AND
ACCESSORIES SHOWN ARE
SUPPLIED BY OTHERS.

DIMENSIONS:
HEIGHT:          96" MAX.
WIDTH:           32" – 38" SIDE WALLS*
                 60" BACK WALL

NOTE:  VARIABLE SIDE WALL SIZES AVAILABLE TO ACCOMMODATE SHOWER PANS.

STANDARD FEATURES:
2" INTEGRAL BULLNOSE TRIM ON EXPOSED EDGES
GLOSS FINISH
MINCEY CLASSIC™
CERAMIC SOAPDISH

OPTIONS (AVAILABLE SELECTIONS):
MINCOR™

AVAILABLE COLORS:
    SOLIDS: #2250 SOLID WHITE, #7256 SOLID GRAY, #7670 SOLID BONE, #7800 SOLID ALMOND
    TEXTURES: #400 SHEER LINEN, #410 WHITE SILK, #420 CASHMERE, #450 GEORGETTE
    GRANITES: #895 LINEN
    PREMIUM: #7N06 WHITE QUARTZ, #830 CANCUN, #835 TIGRIS, #855 CLEAR CREEK,
             #843 SEDONA, #855 CLEAR CREEK



**MINCEY MARBLE**     **TS-VN/ 3" x 6" SUBWAY BRICK tub/shower surrounds®**
TECHNICAL SPECIFICATIONS

## 3" x 6" SUBWAY BRICK SURROUNDS

### STANDARD FEATURES

- MAXIMUM HEIGHT 96"
- 2 – 32" END PANELS
- 1 – 60" BACK PANEL
- 2" INTEGRAL BULLNOSE TRIM ON EXPOSED EDGES
- GLOSS FINISH
- MINCEY CLASSIC™
- CERAMIC SOAPDISH



### OPTIONS: (AVAILABLE SELECTIONS)

- MINCOR™

# L<small>EX</small>2<small>K</small>

Home

## Calder v. Jones, 465 U.S. 783 (1984)

### Facts

The National Enquirer, a Florida Corporation, published an article on Shirley Jones, a California resident, on October 9, 1979. South, a reporter and resident of Florida, wrote the article. He frequently traveled to California on business; he conducted his research for the Jones article in Florida though he telephoned sources in California to prepare the article. Calder, the president and editor of the National Enquirer and resident of Florida, edited and approved the article for publication. He visited California once for pleasure and a second time to testify in an unrelated trial.

The National Enquirer has its principal place of business in Florida. Its total national circulation per week, at that time, was 5 million. California accounted for 600,000 copies or about 10% of its sales. More copies of the paper sold in California than in any other State.

### Procedural History

Shirley Jones and husband filed a libel action in the Superior Court of California against the National Enquirer, its local distributor, Calder and South. The defendants, Calder and South, were served by mail in Florida and contested jurisdiction.

The Superior Court dismissed the suit on jurisdictional grounds citing the First Amendment and the chilling effect assertion of jurisdiction would have on the press if California were able to exercise jurisdiction over nonresident editors and reporters. But the court found that defendants and the State of California otherwise had sufficient contacts to support jurisdiction in non-first amendment right cases.

The California Court of Appeals reversed rejecting the suggestion that jurisdictional analysis required first amendment considerations. Jurisdiction was based on the theory that the Florida defendants knowingly caused tortious injury in California.

The United States Supreme Court affirmed.

## Issue

May a state court exercise jurisdiction over a nonresident newspaper, editor and its reporters in a libel action filed by a forum resident when the newspaper has a substantial circulation in the forum state and the newspaper, its editors and reporters aimed the article at the complaining forum resident knowing it was likely to cause harm against the forum resident?

## Holding

Yes. Provided the newspapers; editors and reporters expressly aimed at the California residents and knew their actions might cause harm in California, the state court of California properly exercised jurisdiction over the nonresident defendants consistent with due process.

## Reasoning

After citing the *International Shoe* standard of minimum contacts, the Court reasoned:

The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered on California. The Article was drawn from California sources, and the brunt of the harm, in terms to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

The Court also emphasized that Calder and South knew the article

would have a devastating impact on the California resident and "expressly aimed" their actions at California, where the newspaper had its largest circulation.

The Court rejected the National Enquirer;s attempt to rely on the First Amendment as a shield. Infusing the jurisdictional analysis, "an already imprecise area" with First Amendment doctrine would double count that constitutional protection since it sets the standard in the substantive libel action.

### Conclusion

*Calder v. Jones* establishes the important "foreign effects" test used in later cases, notably *Panavision v. Toeppen.* Conduct in one state having a tortuous effect in another state can establish the necessary "minimum contacts" to support the exercise of jurisdiction over nonresident defendants.

However, the tendency for argument by analogy is to stray from the facts and rationale of the original case upon which the analogy is based. For example, in *Calder v. Jones*, the National Enquirer story had the capacity to destroy the career and thus the ability to make money, of a well-known actress. The newspaper obtained a lot of revenue from the State of California. The reporter used California sources to get his information. Compare these facts with *Panavision*, where *Toeppen*, a domain name pirate, had nothing to do with California, did not make any money there, did not have sources there but was held to have "minimum contacts" with California because his registration of the domain name Panavision harmed the corporation in California as opposed to any place else the corporation did business or was incorporated, and the claims asserted in that case were trademark infringement claims.

# EXHIBIT E

# EXHIBIT E

**GALLAGHER & KENNEDY**
— P.A. —
**LAW OFFICES**

IVAN J. MLACHAK
DIRECT DIAL: (602) 530-8361
E-MAIL: IVAN.MLACHAK@GKNET.COM

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
PHONE: (602) 530-8000
FAX: (602) 530-8500
WWW.GKNET.COM

November 29, 2006

**VIA CERTIFIED MAIL**

Mr. Kenneth Mincey, CEO
Mincey Marble Manufacturing, Inc.
4321 Browns Bridge Road
Gainesville, GA  30504

  *Re:*  *Cease and Desist Demand – Re-Bath, L.L.C.*
     *(Our File No. 15295-0001)*

Dear Sir:

  This law firm represents Re-Bath, L.L.C. ("Re-Bath") in connection with its intellectual property matters.  Re-Bath engages in business that is related to bathroom design, remodeling, and associated fixtures and products.  In one aspect of this business, Re-Bath designs, manufactures and sells tub and shower surrounds that have specific designs.  These designs are popular designs that are valued by the consuming public.  Further, Re-Bath has protected its intellectual property in these designs by, among other actions, applying for and obtaining patent protection.  For example, Re-Bath is the owner of United States Design Patent No. D523,566 ("the Re-Bath patent"), a copy of which is attached to this letter as Exhibit A.  As you will see, the Re-Bath patent protects the ornamental design for a wall surround system.

  It has come to our client's attention that Mincey Marble also manufactures and offers for sale several designs for tub/shower surrounds.  We have reviewed your product offerings as published on the internet website: www.minceymarble.com.  We have further noted that Mincey Marble manufactures and offers for sale a panel surround design identified by the name "Diamond Panel Surrounds".  Some internet pages related to the product description for the "Diamond Panel Surrounds" are attached to this letter as Exhibit B.  We have also searched the United States Patent and Trademark Office website, but we have not located any (as of this date) U.S. Patents or published Patent Applications which either you invented or that are assigned to your company

Mr. Kenneth Mincey, CEO
November 29, 2006
Page 2

Mr. Mincey, Re-Bath is committed to open and honest business competition, and has built its business reputation on the quality and innovation of its products. While Re-Bath cannot expect all competitors to follow its ethical example, Re-Bath does insist that its competitors respect the legal rights that Re-Bath has diligently obtained in its products, including patent rights. In that connection, we believe that your "Diamond Panel Surround" product may infringe Re-Bath's patent. Can you explain to us why an ordinary observer would not immediately conclude that your "Diamond Panel Surround" is the same as, or is at least substantially similar to, the design claimed in the Re-Bath patent? Finally, as you may conclude that the "Diamond Panel Surround" does infringe the Re-Bath patent, please be aware that Re-Bath is willing to discuss a license of its patent as a possible solution to this business dispute.

In conclusion, we ask that you give this letter the serious attention that it calls for and we further ask that you please give us the courtesy of a prompt response. Let us hear your reply in fifteen (15) days. We have already provided you with the materials you need to address the question presented herein. If you are willing to engage the substance of this letter, we are optimistic that this matter can be amicably resolved to our mutual satisfaction.[1]

Very truly yours,

GALLAGHER & KENNEDY, P.A.

By: _____
Ivan Mlachak
For the Firm

IJM/sss

Attachments

cc:   Norman Murdock

---

[1] This letter is not intended to be, and should not be construed as, an exhaustive list of all of our client's possible causes of action, rights, or claims in connection with your use of the wall/tub surround products. Nothing contained herein is intended or should be construed as a waiver of any rights, claims, remedies, or statements of fact that our client has or may have in connection with this matter or any other matter. All such rights, claims, and remedies are hereby expressly reserved.

1482073

CLEMENTS | WALKER
INTELLECTUAL PROPERTY ATTORNEYS

11625 RAINWATER DRIVE, SUITE 350
ALPHARETTA, GA 30004 USA
TELEPHONE: 678.222.2140
FACSIMILE: 678.222.2166
www.worldpatents.com

PARTNERS
GREGORY N. CLEMENTS*
CHRISTOPHER L. BERNARD*
RICHARD A. WALKER
JASON S. MILLER*

ASSOCIATES
BRANDON G. WILLIAMS*
RUSSELL M. RACINE*
BRADLEY D. CROSE

OF COUNSEL
WILLIAM F. SMITH*

PATENT AGENT
F. RHETT BROCKINGTON, PH.D
LAWRENCE A. BARATTA

*NOT ADMITTED IN GA

January 8, 2007

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*
*AND FACSIMILE*

Ivan J. Mlachak
Gallagher & Kennedy P.A. Law Offices
2575 East Camelback Road
Phoenix, AZ 85016-9225

     Re:    <u>Cease and Desist Demand – Re-Bath, L.L.C.:</u>

Dear Mr. Mlachak:

    We are in receipt of your letter dated November 29, 2006 concerning your firm's allegations of infringement regarding our client's use and/or anticipated use of the Re-Bath, L.L.C. (Re-Bath) ornamental design for a wall surround system. We initially replied to you on December 6, 2006. This is a follow-up letter to that earlier correspondence.

    You allege that our client, Mincey Marble Manufacturing, Inc. (Mincey Marble), infringes on certain Re-Bath designs used in tub and shower wall surrounds. Specifically, you allege that Mincey Marble infringes on U.S. Design Patent No. D523,566 (the Re-Bath patent), filed on May 28, 2004, issued to Murdock on June 20, 2006, and assigned to Re-Bath, LLC. We disagree.

    The Re-Bath patent pertains to "the ornamental design for a hampton tile wall surround system." The design is merely a tessellation of squares. Such tessellations have been known and used in mosaics for millennia.

    Additionally, Mincey Marble has been designing and manufacturing tub and shower wall surrounds with diamond patterns for many years. In fact, Mincey Marble is, and has been for years, in partnership with Hampton Inns to manufacturing tub and shower wall surrounds with diamond patterns. Furthermore, the pattern used in the Mincey Marble "Diamond Panel" surround is not the same as, or similar to, the design in the Re-Bath patent. Each company's diamond pattern is unique in the manner in which it intersects with its border tiles.

We appreciate your client's commitment to "open and honest business competition" and its "ethical example." As such, we are sure that you appreciate the duties of candor, good faith, and disclosure owed to the U.S. Patent and Trademark Office. When relevant and material public disclosures are known to those skilled in the art, patent applicants must not overlook or deliberately withhold such information. Tessellating patterns of repeating squares have been known and used in mosaics for millennia. Mincey Marble has been designing, manufacturing, and publicly marketing diamond pattern panels for years, far preceding the filing date of the Re-Bath patent.

Therefore, the Mincey Marble tub and shower wall surrounds clearly do not infringe the Re-Bath patent.

As always, nothing herein shall be construed as an admission against the interests of our client, all of whose rights are specifically hereby reserved.

Thank you for your time and attention to this matter. I look forward to speaking with you in the near future.

Sincerely

CLEMENTS | WALKER

Bradley D. Crose


cc: Donna Mincey

**GALLAGHER & KENNEDY**
——— · P.A. · ———
LAW OFFICES

IVAN J. MLACHAK
DIRECT DIAL:(602) 530- 8361
E-MAIL:IVAN.MLACHAK@GKNET.COM

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
PHONE: (602) 530-8000
FAX: (602) 530-8500
WWW.GKNET.COM

October 2, 2007

**VIA FACSIMILE AND CERTIFIED MAIL**

Mr. Bradley D. Crose, Esq.
Clements Walker
11625 Rainwater Drive
Suite 350
Alpharetta. GA 30004

Re:     *Re-Bath, L.L.C. – U.S. Design Patent No. D 523,566*

Dear Mr. Crose:

Since our previous correspondence regarding the referenced design patent, we have continued to monitor the conduct of your client, Mincey Marble ("Mincey"). While we were hopeful that Mincey would respect Re-Bath's patent rights and refrain from further infringing activity, we have not seen any change in your client's conduct. We can only conclude that Mincey intends to continue selling its "Diamond Panel Surrounds" tub enclosure, even though Mincey has been expressly advised of the Re-Bath patent. Further confirming our conclusion that Mincey is intentionally exploiting our patent rights is the fact that Mincey has done nothing to modify or redesign its "Diamond Panel Surround." The Mincey product has not changed at all.

In our earlier letter, we asked for an explanation why a neutral observer would not conclude that the Mincey product, the "Diamond Panel Surround" is not the same or at least substantially similar to the Re-Bath patent. However, Mincey has chosen not to specifically address that fundamental issue. Your silence informs us that you have no defense to your client's bald infringement.

Please do not assume that the passage of time allowed as a "grace period" to your client has changed Re-Bath's views of the matter. We previously asked Mincey to consider licensing our patent rights. Now is the time to discuss that subject in seriousness. Please provide us with

Mr. Bradley D. Crose, Esq
October 2, 2007
Page 2

acceptable dates in the next 30 days when representatives of your client would be willing to meet
to discuss the particulars of a patent license.

Very truly yours,

GALLAGHER & KENNEDY, P.A.

By: Ivan J. Mlachak

cc:    Norm Murdock

Mr. Bradley D. Crose, Esq
October 2, 2007
Page 3


bcc:    Brian LaCorte

# CLEMENTS | WALKER
### INTELLECTUAL PROPERTY ATTORNEYS

1901 ROXBOROUGH ROAD, SUITE 300
CHARLOTTE, NC 28211 USA
TELEPHONE: 704.790.3600
FACSIMILE: 704.366.9744
www.worldpatents.com

October 19, 2007

VIA FACSIMILE 602-530-8500
CERTIFIED MAIL and Regular Mail

**PARTNERS**

GREGORY N. CLEMENTS
CHRISTOPHER L. BERNARD
RICHARD A. WALKER*
JASON S. MILLER

**ASSOCIATES**

RUSSELL M. RACINE
LAWRENCE A. BARATTA, JR.*
SETH L. HUDSON

*NOT ADMITTED IN NC

Ivan J. Mlachak
Gallagher & Kennedy P.A. Law Offices
2575 East Camelback Road
Phoenix, AZ 85016-9225

Re:     <u>Cease and Desist Demand – Re-Bath, L.L.C.:</u>
        Our Ref. No.: 060263

Dear Mr. Mlachak:

We write this letter as a follow up to the various communications over the last year, and particularly your letter of October 2, 2007. In short, your continued allegations of infringement of Design Patent No. 523,566 are entirely without merit and utterly baseless. Moreover, they are now harassing. To be clear, our client **will not** entertain any proposed licenses, royalty payments or discounted purchase plan, as requested by Mr. Murdock.

As you and your client (Re-Bath) are well aware, Mincey Marble has been offering its "Diamond Panel Surrounds" for sale since at least as early as **2002**. (*See e.g.*, http://web.archive.org/web/*/http://minceymarble.com). The actual design and conception of the "Diamond Panel Surrounds" can be traced back to at least as early as 2000. *See*, attached Exhibit A. These are the very same products you claim to infringe D 523,566. This offering clearly pre-dates the filing date of your client's patent application.[1] Accordingly, should you insist on continuing to harass our client, we will simply seek to invalidate Re-Bath's patent. As you know this may be done by one or both of the following:

1)  Filing a claim for declaratory relief with the federal courts pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and the United States Patent Act, 35 U.S.C. §101 et seq., and/or

2)  Filing a reexamination request with the USPTO pursuant to 35 U.S.C. §§ 302 – 307 and 37 C.F.R. 1.510.

---

[1] It is worth noting that Re-Bath's other "patented" designs have also been known for many years and are likewise believed to be invalid.

Of course, in addition to our own products, we will provide the court and/or the USPTO with ample prior art on point.

Further, as previously set forth in our January 8, 2007, letter, the pattern of D 523,566 is directed to "the ornamental design for a hampton tile wall surround system." This design is merely a tessellation of squares. Ignoring the fact that such tessellations were known and used well before Re-Bath's "invention", the pattern used in the Mincey Marble "Diamond Panel Surrounds" is not the same as or similar to the design in the D 523,566. Indeed, each company's diamond pattern is unique in the manner in which it intersects with its border tiles. This is evident from even a cursory review of the two patterns.

Notwithstanding the forgoing, as I am sure you are aware; in any infringement suit a court will first address issues of validity. In the case *sub judice*, we are more than confident that the matter will end there. However, should the matter progress, the court will have to apply two distinct tests to determine infringement: the "ordinary observer test" and the "points of novelty test." *Contessa Food Prods., Inc. v. Conagra, Inc*. 282 F.3d 1370. 1377 (Fed. Cir. 2002). Upon a cursory review, Re-Bath cannot establish the requirements of either test.

First, the "ordinary observer test" requires a comparison of the two designs from the view point of the ordinary observer to determine "whether the patented design as a whole is substantially the same as the accused design." *Tropicana Prods., Inc. v. Land O' Lakes, Inc.*, 286 F. Supp. 2d 343, 345 (D. Del 2003), *citing*, *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F2d. 815, 820 (Fed. Cir. 1992). For the rather simplistic reasons stated above, you cannot establish the requirements for this test. In addition, the ordinary observer would not be deceived by Mincey Marble's products and induced into purchasing them, supposing them to be the Re-Bath's.

Next, under the "points of novelty test", a court must determine "whether the accused device … appropriate[s] the novelty in the patented device which distinguishes it from the prior art." *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F2d, 1423, 1444 (Fed. Cir. 1984, *quoting*, *Sears, Roebuck & Co. v. Talge*, 140 F2d 395, 396 (8th Cir. 1944); *see also*, *Bernhart, LLC v. Collezione Europa USA, Inc.*, 386 F. 3d 1371, 1384 (Fed. Cir. 2004) (discussing the required showing for the points of novelty test). As above, Re-Bath cannot satisfy this test. We initially note that your previous letters utterly fail to identify the points of novelty which distinguish your invention from the prior art. We suspect that this is because of your lack of candor with the USPTO in your IDS filing. Moreover, we believe that the points of novelty, if any, which distinguish your invention over the prior art are the very same points of difference between the two patterns. Under either account, Re-Bath's alleged claim fails.

Finally, be assured that should your client decide to pursue this matter in court, Mincey Marble will fully defend itself. Such a defense will likely include various counterclaims, including but not limited to, unfair competition and infringement.

Further, Mincey Marble will ask the court to declare the matter exceptional and award them attorney fees.

Based upon the forgoing, we will now consider this matter closed. After due consideration, we are sure you and your client will do the same. To this end, please provide written confirmation that Re-Bath will no longer harass our client with frivolous threats and correspondence.

Very truly yours,

CLEMENTS WALKER

For the firm:
Jason S. Miller

Cc: Donna Mincey

**EXHIBIT D**

1  **YEN PILCH KOMADINA & FLEMMING, P.C.**
   Firm State Bar No. 00407400
2  Phil S. Flemming, SBN 014778
   6017 North 15th Street
3  Phoenix, Arizona 85014-2481
   (602) 241-0474
4  flemming@ypklaw.com
   Attorneys for defendant
5

6              **UNITED STATES DISTRICT COURT**

7                  **DISTRICT OF ARIZONA**

8  Re-Bath, L.L.C., an Arizona limited liability      No. 2:07-cv-02596 DKD
   company,
9
                           Plaintiff,
10                                                     **ANSWER TO COMPLAINT AND**
11 v.                                                  **COUNTERCLAIMS AND DEMAND**
                                                       **FOR JURY TRIAL**
12 Mincey Marble Manufacturing, Inc., a
   Georgia corporation,
13
                           Defendant.
14 ─────────────────────────────────
15 Mincey Marble Manufacturing, Inc., a
   Georgia corporation,
16
                    Defendant/Counterclaimant,
17
   v.
18
   Re-Bath, L.L.C., an Arizona limited liability
19 company,
20                  Plaintiff/Counterdefendant.

21

22           <u>**ANSWER TO PLAINTIFF'S COMPLAINT**</u>

23               <u>**AND COUNTERCLAIMS**</u>

24

25       Defendant, Mincey Marble Manufacturing, Inc. ("Mincey"), hereby answers the

26 correspondingly numbered paragraphs in Plaintiff's Complaint, and requests a jury trial, by and

27 through its attorneys as follows:

28

1.  Defendant admits that Plaintiff's Complaint purports to bring an action seeking preliminary and permanent relief, monetary relief, costs, and attorney fees pursuant to 35 U.S.C. § 271.  All other allegations of paragraph 1 are denied.

### The Parties

2.  Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 2 and therefore deny all allegations in paragraph 2.

3.  Defendant admits that it is a Georgia corporation with a place of business at 4321 Browns Bridge Road, Gainesville, GA and is authorized to do business in Georgia.  All other allegations of paragraph 3 are denied.

### Jurisdiction and Venue

4.  Defendant is without sufficient information to form a belief as to the truth of the allegations contained in paragraph 4 and therefore denies the same.

5.  Defendant denies the allegations contained in paragraph 5 of plaintiff's complaint.

6.  Defendant denies the allegations contained in paragraph 6 of plaintiff's complaint..

7.  Defendant denies the allegations contained in paragraph 7 of plaintiff's complaint.

8.  Defendant admits that it sells tub and shower surrounds and enclosures to a number of hotel and motel brands.  All other allegations of paragraph 8 are denied.

9.  Defendant admits that it maintains a website www.minceymarble.com.   All other allegations of paragraph 9 are denied.

10. Defendant admits that it sells products to Hilton hotels.   All other allegations of paragraph 10 are denied.

11. Defendant admits that it sells products to Starwood hotels.  All other allegations of paragraph 11 are denied.

12. Defendant admits that it sells products to Marriott hotels.  All other allegations of paragraph 12 are denied.

13. Defendant admits that it sells products to Choice International hotels.   All other allegations of paragraph 13 are denied.

14.    Defendant admits that it sells products to Hotel Sierra. All other allegations of paragraph 14 are denied.

15.    Defendant admits that it sells products to Intercontinental hotels and resorts. All other allegations of paragraph 15 are denied.

16.    Defendant admits that it sells products to Carlson hotels. All other allegations of paragraph 16 are denied.

17.    Defendant denies the allegations contained in paragraph 17 of plaintiff's complaint.

18.    Defendant admits that it has attended trade shows. All other allegations of paragraph 18 are denied.

19.    Defendant admits that is has sold products to Ambath. All other allegations of paragraph 19 are denied.

20.    Defendant denies the allegations contained in paragraph 20 of plaintiff's complaint.

### Background of the Litigation

21.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 and therefore denies the same.

22.    Defendant does not have knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and therefore denies the same.

23.    Defendant admits the allegations contained in paragraph 23 of Plaintiff's complaint.

24.    Defendant admits the allegations contained in paragraph 24 of Plaintiff's complaint.

25.    Defendant admits that it has exchanged correspondence with Plaintiff regarding the alleged intellectual property rights. Defendant affirmatively states that Plaintiff was informed that its alleged patents are invalid in the exchanged correspondence. All other allegations of paragraph 25 are denied.

### Count One: Patent Infringement

26.    Defendant denies all paragraphs and allegations previously denied and admit all paragraphs and allegations previously admitted.

27.    Defendant denies the allegations contained in paragraph 27of plaintiff's complaint.

28.    Defendant denies the allegations contained in paragraph 28 of plaintiff's complaint.

3

1    29.    Defendant denies the allegations contained in paragraph 29 of plaintiff's complaint.

2    30.    Defendant denies the allegations contained in paragraph 30 of plaintiff's complaint.

3    31.    Defendant denies the allegations contained in paragraph 31 of plaintiff's complaint.

4    32.    Defendant denies the allegations contained in paragraph 32 of plaintiff's complaint.

5                                    **AFFIRMATIVE DEFENSES**

6    First Affirmative Defense

7    1.    Plaintiff's claims against Defendant fail for lack of subject matter jurisdiction.

8    Second Affirmative Defense

9    2.    Plaintiff's claims against Defendant fail because Plaintiff does not have standing to sue

10        Defendant.

11    Third Affirmative Defense

12    3.    Plaintiff's claims against Defendants fail for failure to join a necessary party under FED.

13        R. CIV. P. 19.

14    Fourth Affirmative Defense

15    4.    Plaintiff's claims against Defendant fail for failure to state a claim for which relief can be

16        granted.

17    Fifth Affirmative Defense

18    5.    Plaintiff's claims against Defendant fail under the doctrine of equitable estoppel due, for

19        instance, to Plaintiff's unclean hands.

20    Sixth Affirmative Defense

21    6.    Defendant has not engaged in any form of infringement of any valid claim of D'566

22        and/or D'757 whether literally, contributorily or by inducement.  Defendant has not

23        engaged in infringement under the doctrine of equivalents.

24    Seventh Affirmative Defense

25    7.    Plaintiff is barred from enforcing the D'566 and/or D'757 patents by reason of file and

26        prosecution history estoppels.

27    . . .

28    . . .

4

Eighth Affirmative Defense

8.     Plaintiff is barred from enforcing the D'566 and/ or D'757 patents because of waiver, laches, and/or estoppels.

Ninth Affirmative Defense

9.     Plaintiff's claims are barred, in full or in part, because one or more claims of each of the Plaintiff's patents-in-suit (D'566 and/or D'757) are invalid or unenforceable for failing to comply with the provisions of the patent laws, 35 USC § 1 et seq., including but not limited to 35 USC §§ 101, 102, 103, 112, 115 and 132.

Tenth Affirmative Defense

10.    Any claim for damages for patent infringement by Plaintiff is limited, at a minimum, by 35 USC § 287 to those damages occurring only after notice of infringement.

Eleventh Affirmative Defense

11.    The D'566 and D'757 patents are unenforceable because Plaintiff failed to disclose all non-cumulative, material prior art of which Plaintiff was aware to the USPTO during the prosecution of the patents.

12.    Plaintiff had a continuing duty during the prosecution of the D'566 and D'757 patents to disclose all information Plaintiff was aware of that was more material and not merely cumulative over the prior art already before the USPTO pursuant to 37 CFR § 1.56.

13.    More specifically, this duty of disclosure to the USPTO was owed by (1) the purported inventors of the D'566 and D'757 patents (Norman A. Murdock); (2) each attorney or agent who prepared and prosecuted the applications, including at least Donna H. Catalfio and any other attorney at Gallagher & Kennedy PA who assisted in the preparation and prosecution of the applications; (3) every other person who is substantively involved in the preparation or prosecution of the applications and who is associated with the inventor, with the assignee, or with anyone to whom there is an obligation to assign the application. See, 37 CFR § 1.56.

14.    On information and belief, the applications that ultimately resulted in the issuance of the D'566 and D'757 patents were being prosecuted by Plaintiff.

15.   Plaintiff retained the law firm of Gallagher & Kennedy, PA to prosecute both patents.

16.   Mr. Murdock is the named inventor of both patents.

17.   On information and belief, Mr. Murdock and Plaintiff knew of Defendant's prior use of the claimed inventions and the prior use of the claimed inventions by others during the prosecution of the D'566 and D'757 patents.

18.   Such prior use constitutes prior art references which were highly material to the patentability of the claims of the D'566 and D'757 patents.

19.   Nevertheless, neither Plaintiff nor Mr. Murdock disclosed these references to the USPTO during the prosecution of the patents-in-suit.

20.   On information and belief, Plaintiff and Mr. Murdock withheld these references from the USPTO with the intent to deceive the USPTO.

Twelfth Affirmative Defense

21.   Plaintiff has misused the patents-in-suit (D'566 and/or D'757) by the commencement and maintenance of this action, in bad faith, when it should have known that it had no valid claim of patent infringement against Defendant.

Thirteenth Affirmative Defense

22.   Defendants reserves all affirmative defenses under Rules 12(b) and 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, that may now exist or in the future be available based upon discovery and further factual investigation in this case.

## COUNTERCLAIMS

Jurisdiction and Venue

1.   This cause of action arises under the United States patent laws, Title 35 of the United States Code, and under the Declaratory Judgment Statutes 28 USC §§ 2201-2202. This Court has original jurisdiction and supplementary jurisdiction over these counterclaims pursuant to 28 USC §§ 1331, 1338, and 1367.

2.   Venue is proper in this District pursuant to 28 USC § 1391(b)-(c).

3.    This Court has personal jurisdiction over the Counterclaim Defendant, Re-Bath, LLC, and the Counterclaim Plaintiff, Mincey, for this dispute involving this declaratory judgment action and the related claims.

Factual Background

4.    Mincey engages, and has engaged, in the business of providing innovative cultured marble products to customers throughout the United States for over 30 years.  Products provided by Mincey include tub and shower surround systems.  These products are used, inter alia, by the hotel industry.

5.    One of the products provided to customers is a "Diamond Panel Surround" system.  This system has been offered to customers since at least as early as 2002.

6.    Another of the products provided to customers is a "Subway Brick Pattern" Surround system.  This system has been offered to customers since at least as early as November 2004.

7.    On information and belief, Plaintiff/Counter Defendant, Re-Bath, LLC ("ReBath"), engages in business that is related to bathroom design, remodeling and associated fixtures and products.

8.    On information and belief, Plaintiff/ Counter Defendant offers for sale wall surround systems for use in bathrooms, etc.

9.    On information and belief, Plaintiff/Counter Defendant has marketed and markets its products to the same customers of Mincey, including the hotel industry.

10.   Thus, Plaintiff/Counter Defendant and Mincey are competitors in the above described market.

11.   On or about May 28, 2004, Plaintiff/Counter Defendant filed a design patent application directed to an "ornamental design for a hampton tile wall surround system", which later matured into US Pat. No D523,566 ("D'566").

12.   On or about December 29, 2005, Plaintiff/ Counter Defendant filed a design patent application directed to an "ornamental design for the one-piece molded subway tile system", which later matured into US Pat. No D552,757 ("D'757").

13. The use of designs covered by the D'566 and D'757 patents have been well-known in the bathroom remodeling field and other associated fields well before Plaintiff/Counter defendant filed its patent applications and/or sold any of its products.

14. In fact, on previous occasions, Plaintiff/Counter Defendant or its affiliates, purchased products from Mincey such that it could sell the same to its customers.

15. Plaintiff/Counter Defendant was not the first to invent, manufacture, or sell the designs covered by the D'566 and/ or D'757 patents.

16. By way of example, prior to the filing of Plaintiff/Counter Defendant's patent applications, on or about April 2003, Hilton Hotels, owner of the Hampton Inn and associated hotel brands, met with Mincey for approval of a "Hampton tile" wall surround system for its hotels.

17. Mincey subsequently provided Hilton Hotel's with its Diamond Panel Surround system, see Commercial Order Forms and related submissions attached hereto as Exhibit 1.

18. By way of another example, in response to a bid solicitation from Marriott Hotels, Mincey provided an offer to sell its Diamond Surround Panel system in 2000, see Marriott submission attached hereto as Exhibit 2.

19. Prior to the initiation of this litigation, Plaintiff/Counter Defendant was informed that it's claimed intellectual property rights were invalid and/or unenforceable by Mincey, see pre-filing correspondence attached hereto as Exhibit 3.

20. Nevertheless, Plaintiff/Counter Defendant initiated this action.

### Count One: Declaratory Judgment of Non-Infringement

21. Mincey hereby repeats and realleges the allegations in paragraphs 1-20 of this Counterclaim as if fully set forth herein.

22. An actual controversy exists between Mincey and the Plaintiff/Counter Defendant as to whether Mincey's conduct constitutes infringement of any claim of the D'566 and/ or D'757 patents.

23. A judicial declaration that Mincey does not infringe any claim of the D'566 and/or D'757 patents is necessary and appropriate at this time so that Mincey can ascertain its rights

8

and duties with respect to the manufacture, use and/or sale of the products that Plaintiff/Counter Defendant accuses of infringing the D'566 and/or D'757 patents. Mincey is entitled to a declaration and judgment that its acts do not constitute infringement of any claim in the D'566 and/or D'757 patents.

## Count Two: Declaratory Judgment of Patent Invalidity

24.    Mincey hereby repeats and realleges the allegations in paragraphs 1-23 of these Counterclaims as if fully set forth herein.

25.    The D'566 patent is invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code.

26.    The D'757 patent is invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code.

27.    An actual controversy exists between Mincey and the Plaintiff/Counter Defendant as to whether the D'566 and/or D'757 patents are valid under the requirements of the United States Patent Act, 35 USC §100, et seq.

28.    A judicial declaration that the D'566 and/or D'757 patents are invalid for failure to comply with one or more of the requirements of Title 35 of the United States Code is necessary and appropriate at this time so that Mincey can ascertain its rights and duties with respect to the manufacture, use and/or sale of the products that Plaintiff/Counter Defendant accuses of infringing the D'566 and/or D'757 patents. Mincey is entitled to a declaration and judgment that the D'566 and/or D'757 patents are invalid under the United States Patent Act, 35 USC §100, et seq.

## Count Three: Declaratory Judgment of Patent Unenforceability

29.    Mincey hereby repeats and realleges the allegations in paragraphs 1-28 of these Counterclaims as if fully set forth herein.

30.    The D'566 and/or D'757 patents are unenforceable under the requirements of the United States patent Act, 35 USC §100, et seq. and/or applicable precedent relating to enforceability.

31.  An actual controversy exists between Mincey and the Plaintiff/Counter Defendant as to whether the D'566 and/or D'757 patents are enforceable under the requirements of the United States Patent Act, 35 USC §100, et seq. and/or applicable precedent relating to enforceability.

32.  A judicial declaration that the D'566 and/ or D'757 patents are unenforceable is necessary and appropriate at this time so that Mincey can ascertain its rights and duties with respect to the manufacture, use and/or sale of the products that Plaintiff/Counter Defendant accuses of infringing the D'566 and/or D'757 patents.  Mincey is entitled to a declaration and judgment that the D'566 and/or D'757 patents are unenforceable under the United States Patent Act, 35 USC §100, et seq. and/or applicable precedent relating to enforceability.

**Count Four: Declaration of Exceptional Case**

33.  Mincey hereby repeats and realleges the allegations in paragraphs 1-32 of these Counterclaims as if fully set forth herein.

34.  This case is exceptional under 35 USC §285, and Mincey is entitled to an award of its attorneys fees, costs, and expenses related to the adjudication of this case.

**Count Five: Declaratory Judgment of Non-Inducement of Patent Infringement and Contributory Infringement**

35.  Mincey hereby repeats and realleges the allegations in paragraphs 1-34 of these Counterclaims as if fully set forth herein.

36.  An actual controversy exists between Mincey and Plaintiff/Counter Defendant as to whether Mincey engaged in the inducement of infringement or contributorily infringed the D'566 and/ or D'757 patents.

37.  A judicial declaration that Mincey neither induced the infringement of the D'566 and/or D'757 patents nor contributorily infringed the D'566 and/or D'757 patents is necessary and appropriate at this time so that Mincey can ascertain its rights and duties with respect to the sale of the products that the Plaintiff/Counter Defendant accuses of infringement. Mincey is entitled to a declaration and judgment that it has neither induced the

10

1    infringement of the D'566 and/or D'757 patents nor contributorily infringed the D'566

2    and/ or D'757 patents.

3    **Count Six: Violations of the United States Anti-Trust Laws**

4    38.    Mincey hereby repeats and realleges the allegations in paragraphs 1- 37 of these

5           Counterclaims as if fully set forth herein.

6    39.    An actual controversy exists between Mincey and Plaintiff/Counter Defendant as to

7           whether the Plaintiff/Counter Defendant has violated the antitrust laws of the United

8           States relating to prohibitions against anticompetitive behavior.  This is an action for

9           violation of the antitrust laws of the United States and arises under the Clayton Act and

10          the Sherman Act, 15 USC § 2 et seq., to recover damages for injury to the business and

11          property of Mincey sustained as a direct and proximate result of Plaintiff/ Counter

12          Defendant's violations of the United States antitrust laws.

13   40.    Jurisdiction over this action is based on 28 USC § 1337 and 15 USC § 15.  Venue in this

14          district is proper under 28 USC § 1391 and 15 USC § 2.

15   41.    Plaintiff/Counter Defendant engages in business, among others, that is related to

16          bathroom design, remodeling, and associated fixtures and products, including but not

17          limited to tub and shower surrounds and enclosures.

18   42.    A defined and relevant market exists in the United States for tub and shower surrounds

19          and enclosures, including but not limited to the hotel industry.

20   43.    Plaintiff/Counter Defendant is aware of certain customers of Mincey and that said

21          customers require specific designs associated with the products they purchase from

22          Mincey.

23   44.    Mincey's customers include, but are not limited to, the following national hotel chains

24          and their subsidiaries: Hilton Hotels, Starwood Hotels, Marriot Hotels, Choice

25          International Hotels, Hotel Sierra, International Hotels and Resorts, and Carlson Hotels.

26   45.    Plaintiff/Counter Defendant has asserted the D'566 patent against Mincey even though

27          Plaintiff/Counter Defendant knew or should have known the D'566 patent is invalid, not

28

1      infringed, and/or Plaintiff/ Counter Defendant procured the D'566 patent by fraud

2      and/or inequitable conduct.

3  46.  Plaintiff/Counter Defendant has asserted the D'757 patent against Mincey even though

4      Plaintiff/Counter Defendant knew or should have known the D'757 patent is invalid, not

5      infringed, and/ or Plaintiff/ Counter Defendant procured the D'757 patent by fraud

6      and/or inequitable conduct.

7  47.  Plaintiff/Counter Defendant has undertaken such action against Mincey with the

8      purpose and intent of injuring Mincey and of monopolizing, or intending to monopolize,

9      interstate commerce in the market for tub and shower surrounds and enclosure products.

10  48.  The entirety of Plaintiff/Counter Defendant's actions before the USPTO evidences an

11      intent to obtain an illegal patent monopoly in tub and shower surrounds and enclosures,

12      including associated Hampton and Subway type designs. Upon information and belief,

13      Plaintiff/Counter Defendant has attempted to illegally enforce its patent rights, knowing

14      that these rights were procured improperly from the USPTO, all of which constitute a

15      Handgards-type antitrust violation.

16  49.  Plaintiff/Counter Defendant, by the totality of its actions in the marketplace and

17      otherwise, has monopolized, or attempted to monopolize, interstate commerce in the

18      market for tub and shower surrounds and enclosures in violation of the United States

19      antitrust laws.

20  50.  There exists a dangerous possibility that Plaintiff/Counter Defendant has succeeded to

21      illegally monopolize this market or will succeed in this attempt to illegally monopolize

22      this market.

23  51.  As a direct and proximate result of Plaintiff/Counter Defendant's violation of the United

24      States antitrust laws, Mincey has sustained and will continue to sustain injury to its

25      business and property, including, but not limited to, (a) the loss of sales of tub and

26      shower surrounds and enclosures, (b) the costs and expenses of defending against

27      Plaintiff/Counter Defendant's patent infringement allegations, (c) bringing and

28      prosecuting this counterclaim action in the face of Plaintiff/Counter Defendant's

1    baseless and unlawful charges against Mincey, and (d) the losses and costs inherent in the

2    disruption of Mincey's business caused by Plaintiff/ Counter Defendant's baseless and

3    unlawful conduct.

4  52.    As a direct and proximate result of Plaintiff/Counter Defendant's violation of the United

5    States antitrust laws, the public is being denied the benefit of full and free competition

6    in the market for tub and shower surrounds and enclosures and has been subjected to

7    Plaintiff/ Counter Defendant's continued monopolization or attempts to monopolize the

8    defined market and Mincey has suffered damages as a result of Plaintiff/ Counter

9    Defendant's actions.

10    **Count Seven: Unfair Competition**

11  53.    Mincey hereby repeats and realleges the allegations in paragraphs 1-52 of these

12    Counterclaims as if fully set forth herein.

13  54.    Plaintiff/Counter Defendant's actions described above are in violation of Mincey's

14    common law rights and constitute unfair competition.

15  55.    Mincey has suffered damages and will continue to suffer damages as a result of

16    Plaintiff/ Counter Defendant's action that constitute unfair competition.

17    **PRAYER**

18  WHEREFORE, Defendant prays that:

19    1.    Plaintiff take nothing by its Complaint, including a denial of all requested relief

20        set forth in that Complaint;

21    2.    The Court dismiss Plaintiff's Complaint with prejudice;

22    3.    The Court find and enter a judgment declaring that no claim of the D'566 Patent

23        has been infringed by Mincey;

24    4.    The Court find and enter a judgment declaring that no claim of the D'757 Patent

25        has been infringed by Mincey;

26    5.    The Court find and enter a judgment declaring the D'566 Patent to be invalid;

27    6.    The Court find and enter a judgment declaring the D'757 Patent to be invalid;

28

7.  The Court find and enter a judgment declaring the D'566 Patent to be unenforceable;

8.  The Court find and enter a judgment declaring the D'757 Patent to be unenforceable;

9.  The Court enter a judgment or decree that Mincey has the right to continue to market all of their products without any threat or other interference whatsoever against Mincey, based on or arising out of the Plaintiff alleged ownership of the D'566 Patent;

10. The Court enter a judgment or decree that Mincey has the right to continue to market all of their products without any threat or other interference whatsoever against Mincey, based on or arising out of the Plaintiff alleged ownership of the D'757 Patent;

11. The Court enter an order preliminarily and permanently enjoining the Plaintiff, its officers, agents, employees, and attorneys from prosecuting or bringing or threatening to bring any action against the Defendant or any buyers, sellers, or users of Mincey products for alleged infringement of the D'566 Patent or any other patent held by the Plaintiff;

12. The Court enter an order preliminarily and permanently enjoining the Plaintiff, its officers, agents, employees, and attorneys from prosecuting or bringing or threatening to bring any action against the Defendant or any buyers, sellers, or users of Mincey products for alleged infringement of the D'757 Patent or any other patent held by the Plaintiff;

13. The Court declare this case exceptional under 35 U.S.C. § 285 against the Plaintiff;

14. The Court find and enter a judgment declaring that Mincey has neither induced infringement of any claim of either the D'566 and/or D'757 Patents nor contributorily infringed any claim of either the D'566 and/ or D'757 Patents;

15.     The Court find and enter a judgment declaring that ReBath has violated Section 2 of the antitrust laws of the United States, either through a Handsgards-type antitrust violation or a violation of the Sherman and/or Clayton Acts, 15 U.S.C. § 2 *et seq.*;

16.     The Court enjoin ReBath and all persons in active concert or participation with ReBath, directly or indirectly, from (a) interfering in the business of Mincey; (b) charging infringement or instituting any action for infringement of the D'566 and/or D'757 Patents against Mincey, its customers, or any manufacturer of tub and shower surround and enclosure products; and (c) violating the antitrust laws of the United States;

17.     The Court find and enter a judgment against ReBath for unfair competition;

18.     The Court find and enter judgment for the amount of actual damages as determined by the trier of fact together with pre-judgment interest and post-judgment interest at a rate to be determined by law;

19.     The Court find and enter judgment for the amount of exemplary damages as determined by the trier of fact together with prejudgment interest and post judgment interest at a rate to be determined by law;

20.     The Court award Mincey treble damages under the antitrust statutes;

21.     The Court award Mincey attorneys fees, expenses, and costs against the Plaintiff;

22.     The Court award Mincey pre-judgment and post-judgment interest on all damages, attorneys fees, expenses, and costs awarded; and

23.     The Court Mincey such other and further relief as it deems just and proper.

## JURY DEMAND

Mincey hereby demands a trial by jury of all issues so triable in this Action.

**DATED** this 23rd day of January, 2008.

. . .

. . .

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**YEN PILCH KOMADINA
& FLEMMING, P.C.**

By:_____s/ Phil S. Flemming_____
Phil S. Flemming
6017 N. 15th Street
Phoenix, Arizona 85014
Attorneys for defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2008, I electronically transmitted the attached

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice

of Electronic Filing to the following CM/ECF registrants.

Brian W. LaCorte
Ivan J. Mlachak

s/Carol L. Thomas, CLA

S:\Active\Mincey Marble\Pleading\answer.wpd

16

# EXHIBIT 1

**COMMERCIAL ORDER**

**MINCEY MARBLE MFG**

*ask DMC & DLC on ship method*

**Circle one – Flatbed  LTL  UPS  Van  Pickup  MM deliver  Next Day Frt** _____

**PO RECEIVED   COD** _____

*arrival schedule.*

**SHIP DATE** 6/20

**ORDER DATE** 6/17/03

**SITE LOCATION     PAGE [ OF [**

**NAME** Hilton Hotel

**STREET** _____

**CITY** _____ **STATE** _____

**PHONE** _____ **ZIP** _____

**CONTACT** _____

Hilton Hotel Corp
755 Crossover Lane
Memphis, TN  38117
Attn: Rick Bishop
901  755 9611

*Samples*

*Macaroon* *Matte* ↑

4 - 30 x 88 1/2 x 1/4 Diamond Side Panels

☒

1 - 4 x 88 1/2 x 1/4 ☒☒  seam covers

1 - 10 x 88 1/2 x 1/4 ☒☒

2 - 96 x 2 x 3/4 trim ☒

2 - Corner SD

1 - Wall SD

2 - 96 x 2 x 1 1/4 ☒ trim

INStalled
Diamonds iN
Hilton Model
room

Earlier, a shower pan mold was  (~60x30)
made for this company. Sample of pan
shipped to Hilton for approval but no
paperwork was done for office files.

**ORDER #**
4531A

**COMMERCIAL ORDER**
**MINCEY MARBLE MFG**    ask OMC for shipping preference    **HIP DATE** _OMC_
**ORDER DATE** _7/24/03_
**Circle one--** Flatbed  LTL  UPS  Van  Pickup  MM deliver  Next Day Frt  _____
**PO RECEIVED___ COD___**    **SITE LOCATION    PAGE / OF /**

**NAME** _Hilton Hotel_           _Hilton Hotel Corp_
**STREET** _____         _755 Crossover Lane_
**CITY** _____ **STATE** ___      _Memphis, TN  38117_
**PHONE** _____ **ZIP** ____
**CONTACT** _____          _901·755·9611_

_Macaroon Matte_

1 - 60 x 78 x 1/4  <u>Diamond</u>  Back Panel  #    very good edges!
2 - 30 x 78 x 1/4  <u>Diamond</u>  <u>Side Panels</u> [#
2 - 96 x 2 x 3/4  [#  <(may not use trim)
1 - W/all SD
1 - Corner SD

**HQ DISPLAY**
**Inspect Carefully!**
(before shipping)

**ORDER #**
4625A

# EXHIBIT 2

**MINCEY MARBLE MANUFACTURING, INC.**

Post Office Box 2381 / Gainesville, Georgia 30503
Tel: 800 . 533 . 1806 / Tel: 770 . 532 . 0451 / Fax: 770 . 531 . 0935
Internet: www.minceymarble.com

## FAX COVER SHEET

Date: 5/23/00          Time: _____

To: Steve Kopke    Fax No: _____

Company: MARRIOTT

From: Donna Mincey

Number of pages to follow transmittal sheet: 2

COMMENTS: Are these dimensions
clear enough?

_Please contact sender at 770.532.0451 if all pages
are not as noted._

_Be sure to visit our website at
www.minceymarble.com._

_Thank You._

MINCEY MARBLE MFG. INC.

MINCEY MARBLE MFG. INC.

COURTYARD /SPRINGHILL SUITES BY MARRIOTT

TUB SIDE WALL DETAIL

DATE: MAY 16TH 2000 | DWG. NO.: MC-003A
DRAWN BY: EDDIE K. STROUD

TYPICAL TOP/BOTTOM BORDER 58"

TYPICAL SIDE BORDERS 43½"

SYMMETRICAL ABOUT C.L.

49"

8"

8"

8"

8"

20-9/16"

30"

8"

8"

TYPICAL GROUT JOINT

TYPICAL CORNER TILE 3" X 3"
(TYPICAL 4 PLACES)

3"

TYPICAL TILE 10" SQUARE

TYPICAL TILE (8) PLACES
(4 MIDDLE TILES EACH SIDE)
TYPICAL TILE (4) PLACES
(1 TILE NEXT TO EACH CORNER TILE)

7"

7-3/32"

7-3/32"

7-3/32"

TYPICAL TILE (4) PLACES
(2 TILES TOP - 2 TILES BOTTOM)

60"



MINCEY MARBLE MFG. INC.

TUB BACK WALL PANEL DETAIL

COURTYARD / SPRINGHILL SUITES BY MARRIOTT

MINCEY MARBLE MFG. INC.

| DATE : MAY 16TH 2000 | DWG. NO. : MC-003 |
| DRAWN BY : EDDIE K. STROUD | |

TYPICAL TILE 10" SQUARE

TYPICAL GROUT JOINT

INSIDE GROUT JOINT

TYPICAL BORDER WIDTH

TYPICAL CORNER TILE 3" X 3"
TYPICAL (4 PLACES)

TYPICAL TILE (16 PLACES)

TYPICAL TILE (8 PLACES)
(1 TILE EACH SIDE OF CORNER TILES)

TYPICAL TILE (16 PLACES)
(4 MIDDLE TILES EACH SIDE)

# EXHIBIT 3

GALLAGHER & KENNEDY
P.A.
LAW OFFICES

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
PHONE: (602) 530-8000
FAX: (602) 530-8500
WWW.GKNET.COM

IVAN J. MLACHAK
DIRECT DIAL: (602) 530-8361
E-MAIL: ivan.mlachak@gknet.com

November 29, 2006

**VIA CERTIFIED MAIL**

Mr. Kenneth Mincey, CEO
Mincey Marble Manufacturing, Inc.
4321 Browns Bridge Road
Gainesville, GA  30504

     Re:    *Cease and Desist Demand — Re-Bath, L.L.C.*
            *(Our File No. 15295-0001)*

Dear Sir:

     This law firm represents Re-Bath, L.L.C. ("Re-Bath") in connection with its intellectual property matters. Re-Bath engages in business that is related to bathroom design, remodeling, and associated fixtures and products. In one aspect of this business, Re-Bath designs, manufactures and sells tub and shower surrounds that have specific designs. These designs are popular designs that are valued by the consuming public. Further, Re-Bath has protected its intellectual property in these designs by, among other actions, applying for and obtaining patent protection. For example, Re-Bath is the owner of United States Design Patent No. D523,566 ("the Re-Bath patent"), a copy of which is attached to this letter as Exhibit A. As you will see, the Re-Bath patent protects the ornamental design for a wall surround system.

     It has come to our client's attention that Mincey Marble also manufactures and offers for sale several designs for tub/shower surrounds. We have reviewed your product offerings as published on the internet website: www.minceymarble.com. We have further noted that Mincey Marble manufactures and offers for sale a panel surround design identified by the name "Diamond Panel Surrounds". Some internet pages related to the product description for the "Diamond Panel Surrounds" are attached to this letter as Exhibit B. We have also searched the United States Patent and Trademark Office website, but we have not located any (as of this date) U.S. Patents or published Patent Applications which either you invented or that are assigned to your company

1482073



Mr. Kenneth Mincey, Esq.
November 29, 2006
Page 2

Mr. Mincey, Re-Bath is committed to open and honest business competition, and has built its business reputation on the quality and innovation of its products. While Re-Bath cannot expect all competitors to follow its ethical example, Re-Bath does insist that its competitors respect the legal rights that Re-Bath has diligently obtained in its products, including patent rights. In that connection, we believe that your "Diamond Panel Surround" product may infringe Re-Bath's patent. Can you explain to us why an ordinary observer would not immediately conclude that your "Diamond Panel Surround" is the same as, or is at least substantially similar to, the design claimed in the Re-Bath patent? Finally, as you may conclude that the "Diamond Panel Surround" does infringe the Re-Bath patent, please be aware that Re-Bath is willing to discuss a license of its patent as a possible solution to this business dispute.

In conclusion, we ask that you give this letter the serious attention that it calls for and we further ask that you please give us the courtesy of a prompt response. Let us hear your reply in fifteen (15) days. We have already provided you with the materials you need to address the question presented herein. If you are willing to engage the substance of this letter, we are optimistic that this matter can be amicably resolved to our mutual satisfaction.[1]

Very truly yours,

GALLAGHER & KENNEDY, P.A.

By: _____
Ivan Mlachak
For the Firm

IJM/sss

Attachments

cc:    Norman Murdock

---

[1] This letter is not intended to be, and should not be construed as, an exhaustive list of all of our client's possible causes of action, rights, or claims in connection with your use of the wall/tub surround products. Nothing contained herein is intended or should be construed as a waiver of any rights, claims, remedies, or statements of fact that our client has or may have in connection with this matter or any other matter. All such rights, claims, and remedies are hereby expressly reserved.

1482073

# CLEMENTS | WALKER
### INTELLECTUAL PROPERTY ATTORNEYS

11625 RAINWATER DRIVE, SUITE 350
ALPHARETTA, GA  30004 USA
TELEPHONE:  678.222.2140
FACSIMILE:  678.222.2166
www.worldpatents.com

PARTNERS
GREGORY N. CLEMENTS*
CHRISTOPHER L. BERNARD*
RICHARD A. WALKER
JASON S. MILLER*

ASSOCIATES
BRANDON G. WILLIAMS*
RUSSELL M. RACINE*
BRADLEY D. CROGE

OF COUNSEL
WILLIAM F. SMITH

PATENT AGENT
F. RHETT BROCKINGTON, PH.D
LAWRENCE A. BARATTA

*NOT ADMITTED IN GA

January 8, 2007

*VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AND FACSIMILE*

Ivan J. Mlachak
Gallagher & Kennedy P.A. Law Offices
2575 East Camelback Road
Phoenix, AZ  85016-9225

Re:    Cease and Desist Demand – Re-Bath, L.L.C.:

Dear Mr. Mlachak:

We are in receipt of your letter dated November 29, 2006 concerning your firm's allegations of infringement regarding our client's use and/or anticipated use of the Re-Bath, L.L.C. (Re-Bath) ornamental design for a wall surround system. We initially replied to you on December 6, 2006. This is a follow-up letter to that earlier correspondence.

You allege that our client, Mincey Marble Manufacturing, Inc. (Mincey Marble), infringes on certain Re-Bath designs used in tub and shower wall surrounds. Specifically, you allege that Mincey Marble infringes on U.S. Design Patent No. D523,566 (the Re-Bath patent), filed on May 28, 2004, issued to Murdock on June 20, 2006, and assigned to Re-Bath, LLC. We disagree.

The Re-Bath patent pertains to "the ornamental design for a hampton tile wall surround system." The design is merely a tessellation of squares. Such tessellations have been known and used in mosaics for millennia.

Additionally, Mincey Marble has been designing and manufacturing tub and shower wall surrounds with diamond patterns for many years. In fact, Mincey Marble is, and has been for years, in partnership with Hampton Inns to manufacturing tub and shower wall surrounds with diamond patterns. Furthermore, the pattern used in the Mincey Marble "Diamond Panel" surround is not the same as, or similar to, the design in the Re-Bath patent. Each company's diamond pattern is unique in the manner in which it intersects with its border tiles.





We appreciate your client's commitment to "open and honest business competition" and its "ethical example." As such, we are sure that you appreciate the duties of candor, good faith, and disclosure owed to the U.S. Patent and Trademark Office. When relevant and material public disclosures are known to those skilled in the art, patent applicants must not overlook or deliberately withhold such information. Tessellating patterns of repeating squares have been known and used in mosaics for millennia. Mincey Marble has been designing, manufacturing, and publicly marketing diamond pattern panels for years, far preceding the filing date of the Re-Bath patent.

Therefore, the Mincey Marble tub and shower wall surrounds clearly do not infringe the Re-Bath patent.

As always, nothing herein shall be construed as an admission against the interests of our client, all of whose rights are specifically hereby reserved.

Thank you for your time and attention to this matter. I look forward to speaking with you in the near future.

Sincerely

CLEMENTS | WALKER

Bradley D. Crose

cc: Donna Mincey




GALLAGHER & KENNEDY
P.A.
LAW OFFICES

IVAN J. MLACHAK
DIRECT DIAL:(602) 530- 8361
E-MAIL:IVAN.MLACHAK@GKNET.COM

2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
PHONE: (602) 530-8000
FAX: (602) 530-8500
WWW.GKNET.COM

October 2, 2007

**VIA FACSIMILE AND CERTIFIED MAIL**

Mr. Bradley D. Crose, Esq.
Clements Walker
11625 Rainwater Drive
Suite 350
Alpharetta. GA 30004

        Re:     *Re-Bath, L.L.C. - U.S. Design Patent No. D 523,566*

Dear Mr. Crose:

        Since our previous correspondence regarding the referenced design patent, we have continued to monitor the conduct of your client, Mincey Marble ("Mincey"). While we were hopeful that Mincey would respect Re-Bath's patent rights and refrain from further infringing activity, we have not seen any change in your client's conduct. We can only conclude that Mincey intends to continue selling its "Diamond Panel Surrounds" tub enclosure, even though Mincey has been expressly advised of the Re-Bath patent. Further confirming our conclusion that Mincey is intentionally exploiting our patent rights is the fact that Mincey has done nothing to modify or redesign its "Diamond Panel Surround." The Mincey product has not changed at all.

        In our earlier letter, we asked for an explanation why a neutral observer would not conclude that the Mincey product, the "Diamond Panel Surround" is not the same or at least substantially similar to the Re-Bath patent. However, Mincey has chosen not to specifically address that fundamental issue. Your silence informs us that you have no defense to your client's bald infringement.

        Please do not assume that the passage of time allowed as a "grace period" to your client has changed Re-Bath's views of the matter. We previously asked Mincey to consider licensing our patent rights. Now is the time to discuss that subject in seriousness. Please provide us with

Mr. Bradley D. Crose, Esq
October 2, 2007
Page 2

acceptable dates in the next 30 days when representatives of your client would be willing to meet
to discuss the particulars of a patent license.

Very truly yours,

GALLAGHER & KENNEDY, P.A.

By: 

Ivan J. Mlachak

cc:     Norm Murdock



CLEMENTS | WALKER
INTELLECTUAL PROPERTY ATTORNEYS

1901 ROXBOROUGH ROAD, SUITE 300
CHARLOTTE, NC 28211 USA
TELEPHONE: 704.790.3600
FACSIMILE: 704.366.9744
www.worldpatents.com

October 19, 2007

**PARTNERS**

GREGORY N. CLEMENTS
CHRISTOPHER L. BERNARD
RICHARD A. WALKER*
JASON S. MILLER

VIA FACSIMILE 602-530-8500
CERTIFIED MAIL and Regular Mail

**ASSOCIATES**

RUSSELL M. RACINE
LAWRENCE A. BARATTA, JR.*
SETH L. HUDSON

Ivan J. Mlachak
Gallagher & Kennedy P.A. Law Offices
2575 East Camelback Road
Phoenix, AZ  85016-9225

*NOT ADMITTED IN NC

Re:     Cease and Desist Demand – Re-Bath, L.L.C.:
        Our Ref. No.: 060263

Dear Mr. Mlachak:

   We write this letter as a follow up to the various communications over the last
year, and particularly your letter of October 2, 2007.  In short, your continued allegations
of infringement of Design Patent No. 523,566 are entirely without merit and utterly
baseless.  Moreover, they are now harassing.  To be clear, our client **will not** entertain
any proposed licenses, royalty payments or discounted purchase plan, as requested by
Mr. Murdock.

   As you and your client (Re-Bath) are well aware, Mincey Marble has been
offering its "Diamond Panel Surrounds" for sale since at least as early as 2002. (See e.g.,
http://web.archive.org/web/*/http://minceymarble.com).    The  actual  design  and
conception of the "Diamond Panel Surrounds" can be traced back to at least as early as
2000. See, attached Exhibit A.  These are the very same products you claim to infringe D
523,566.    This offering clearly pre-dates the filing date of your client's patent
application.[1]   Accordingly, should you insist on continuing to harass our client, we will
simply seek to invalidate Re-Bath's patent.  As you know this may be done by one or
both of the following:

1)  Filing a claim for declaratory relief with the federal courts pursuant to the
    Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and the United States
    Patent Act, 35 U.S.C. §101 et seq., and/or

2)  Filing a reexamination request with the USPTO pursuant to 35 U.S.C. §§ 302
    – 307 and 37 C.F.R. 1.510.

---

[1] It is worth noting that Re-Bath's other "patented" designs have also been known for many years and are
likewise believed to be invalid.

Page 1 of 3
CHARLOTTE | ATLANTA



Of course, in addition to our own products, we will provide the court and/or the USPTO with ample prior art on point.

Further, as previously set forth in our January 8, 2007, letter, the pattern of D 523,566 is directed to "the ornamental design for a hampton tile wall surround system." This design is merely a tessellation of squares. Ignoring the fact that such tessellations were known and used well before Re-Bath's "invention", the pattern used in the Mincey Marble "Diamond Panel Surrounds" is <u>not</u> the same as or similar to the design in the D 523,566. Indeed, each company's diamond pattern is unique in the manner in which it intersects with its border tiles. This is evident from even a cursory review of the two patterns.

Notwithstanding the forgoing, as I am sure you are aware; in any infringement suit a court will first address issues of validity. In the case *sub judice*, we are more than confident that the matter will end there. However, should the matter progress, the court will have to apply two distinct tests to determine infringement: the "ordinary observer test" and the "points of novelty test." *Contessa Food Prods., Inc. v. Conagra, Inc.* 282 F.3d 1370. 1377 (Fed. Cir. 2002). Upon a cursory review, Re-Bath cannot establish the requirements of either test.

First, the "ordinary observer test" requires a comparison of the two designs from the view point of the ordinary observer to determine "whether the patented design as a whole is substantially the same as the accused design." *Tropicana Prods., Inc. v. Land O' Lakes, Inc.*, 286 F. Supp. 2d 343, 345 (D. Del 2003), *citing*, *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F2d. 815, 820 (Fed. Cir. 1992). For the rather simplistic reasons stated above, you cannot establish the requirements for this test. In addition, the ordinary observer would not be deceived by Mincey Marble's products and induced into purchasing them, supposing them to be the Re-Bath's.

Next, under the "points of novelty test", a court must determine "whether the accused device ... appropriate[s] the novelty in the patented device which distinguishes it from the prior art." *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F2d, 1423, 1444 (Fed. Cir. 1984, *quoting*, *Sears, Roebuck & Co. v. Talge*, 140 F2d 395, 396 (8th Cir. 1944); *see also*, *Bernhart, LLC v. Collezione Europa USA, Inc.*, 386 F. 3d 1371, 1384 (Fed. Cir. 2004) (discussing the required showing for the points of novelty test). As above, Re-Bath cannot satisfy this test. We initially note that your previous letters utterly fail to identify the points of novelty which distinguish your invention from the prior art. We suspect that this is because of your lack of candor with the USPTO in your IDS filing. Moreover, we believe that the points of novelty, if any, which distinguish your invention over the prior art are the very same points of difference between the two patterns. Under either account, Re-Bath's alleged claim fails.

Finally, be assured that should your client decide to pursue this matter in court, Mincey Marble will fully defend itself. Such a defense will likely include various counterclaims, including but not limited to, unfair competition and infringement.

Further, Mincey Marble will ask the court to declare the matter exceptional and award them attorney fees.

Based upon the forgoing, we will now consider this matter closed. After due consideration, we are sure you and your client will do the same. To this end, please provide written confirmation that Re-Bath will no longer harass our client with frivolous threats and correspondence.

Very truly yours,

CLEMENTS WALKER

For the firm:
Jason S. Miller

Cc: Donna Mincey

Page 3 of 3

